**UNITED STATES of America**

v.

**George AGEE, Appellant.**

**Nos. 77–1675, 77–1689.**

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1977.

Reargued En Banc Nov. 6, 1978.

Decided March 6, 1979.

Certiorari Denied June 18, 1979.

See 99 S.Ct. 2889.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Bonnie Brigance Leadbetter, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Douglas Riblet, Alan Turner, Asst. Defenders, Defender Association of Pa., Philadelphia, Pa., for appellant.

Argued Dec. 2, 1977.

Before GIBBONS and VAN DUSEN, Circuit Judges, and GERRY,* District Judge.

Reargued Nov. 6, 1978 In Banc.

Before SEITZ, Chief Judge, ALDISERT, GIBBONS, ROSENN, HUNTER, WEIS, GARTH, HIGGINBOTHAM, and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This is an appeal by the defendant, George Agee, from his conviction in the district court of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841 (1976). Agee asserts four grounds for reversing his conviction: (1) The United States Attorney should not have introduced evidence which had been suppressed in a prior state prosecution arising out of the same incident; (2) the trial court did not include in its instructions to the jury a charge which Agee's counsel had requested; (3) it was disclosed to the jury that in a conversation with the police prior to his arrest, Agee did not inform them that there were narcotics in his car; (4) the trial judge questioned Agee in the presence of the jury regarding his decision to waive his Fifth Amendment right not to testify.

While all of the issues raised by Agee on this appeal have had our attention, it is the third issue—concerning Agee's conversation with the police prior to his arrest—that resulted in our ordering rehearing of this appeal en banc.[1] Agee claims in connection with this issue that the Supreme Court's decisions in *United States v. Hale*[2] and *Doyle v. Ohio*[3] require the reversal of his conviction. This is so, he argues, because his exercise of the right to remain silent was disclosed to the jury. Contrary to Agee's argument, we hold that his rights under *Hale* and under the Fifth Amendment were not violated. Finding no merit in Agee's other arguments, we affirm.

I

Agee was arrested on February 12, 1976 by Philadelphia Police Officers Michael Zagursky and Robert Wissman. The arresting officers testified that they observed Agee driving an automobile which made two turns without signalling. They followed Agee's vehicle and waived it over to the side of the road. They then left their vehicle and walked up to the car which they had stopped. Officer Wissman testified that he observed that the driver, Agee, was attempting to conceal under the seat a foil

* Honorable John T. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

1. Agee's appeal, initially heard by a panel of this court, was ordered to be reheard by the court *en banc* on April 17, 1978. The original panel opinion was ordered vacated on the same date.

2. 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).

3. 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

package containing glassine packets of tan powder. As he approached the car on the passenger's side, Officer Zagursky saw a similar package on the floor in front of the passenger, Andrew Smith. Believing the powder in the packages to be heroin, they placed Agee and Smith under arrest and seized the foil packages. Subsequent analysis revealed that the packages contained a mixture of heroin, quinine, procaine and reducing sugar.

A federal grand jury returned an indictment charging Agee and Smith with possession of heroin with intent to distribute in violation of 21 U.S.C. § 841 (1976). After a trial at which Agee testified but Smith did not, the jury found both defendants guilty of the charge. After sentencing,[4] Agee appealed from his conviction; he also appealed from the trial court's order denying his motion for entry of a judgment of acquittal or, in the alternative, for a new trial.

## II

### A

■ Agee testified at his trial, giving an account of the events leading to his arrest on February 12, 1976. On direct examination, he testified that, on that date, Smith was a passenger in Agee's unlicensed taxicab, and that he may have been a passenger in his taxicab on prior occasions. While Agee was driving with Smith as his passenger, a policeman in a patrol car signalled to him to pull over to the side of the road. He did so and then informed his passenger that they had been stopped by the police:

A. "I pulled over on the side and so my passenger, Smith, asked me—he said, 'Why are you stopping.' I said, 'The policeman is in back of me. They're pulling me over.' Smith said to me, 'I have dope on me.' He throwed a bag of silver foil bag over across over to me and I picked it up. I was going to throw it back on him. I didn't know whether to throw it back

on him or throw it out the window or what.

.    .    .    .    .

A. I started to throw it over to him. I didn't know whether to throw it to him or throw it out the window. Then I got a little thing in the center of my car called a—got a little thing I could lift up.
Q. Is that the console?
A. Console, yes. So I tried to lift up this console to put it in there. I couldn't get it up because I used, always would use a pencil to stick it in one of those holes to push it up if I want to put something in there. So I couldn't hide it under there. So I put it under my seat and I got out of my car right away.

.    .    .    .    .

Q. What happened next?
A. I got out of my car. I walked back toward the policeman."

His testimony regarding the events immediately preceding his arrest was as follows:

"Now, I thought that they felt like they were stopping me because I didn't have no brakelights. This is why I thought they were stopping me.

So anyway I come to the back. So I told the policeman, I said, 'I know why you're stopping me, because I don't have any brakelights.'

So I showed him my owner's card and my driver's license. So he looked at my owner's card and my driver's license. So he asked me, you know, so he said, 'Do you have any weapons on you?' So I said, 'No, I don't have any weapons.'

He said, 'Do you have any dope?' So I said, 'No, I don't have no dope on me.'

So he searched me. So then I went to open up the trunk of my car .    .    .. The police officer didn't bother about looking into the trunk. He went straight to the front of my car. He looked underneath the seat. He found this package that I had stuck underneath the seat."

---

4. Agee was sentenced to ten years in prison. The execution of this sentence was suspended, and Agee was ordered to be confined for six months with a five-year probation to follow.

Agee was also ordered to serve a three-year special parole if he violated the terms of his probation.

After the completion of Agee's direct testimony, he was cross-examined first by Smith's attorney and then by the government. During his cross-examination of Agee, Smith's counsel asked Agree whether he had "made any statement to the police at any time?" Agee replied that he had not. The government then asked a series of questions which retraced Agee's testimony on direct examination. Agee admitted that, at the time he left his car to speak with the police, he knew that there were drugs in Smith's possession. Agee also admitted that he had concealed some of those drugs under his seat. He was then asked whether his purpose in approaching the policemen was "to keep the police from coming up to your car." Agee replied that "[t]hat's what I had in mind." He further testified that "what was in [his] mind" was to "tell Smith to take his stuff and get out of my car". The prosecutor then asked Agee:

> Q. But it wasn't in your mind to say to the police, "That man in my car has dope. Arrest him."?
>
> A. No, ma'am.

On *redirect* examination, Agee testified that he had not told the police that Smith had drugs because he wanted to consult with a lawyer and did not believe that the policemen would tell the truth.

During their summations, the attorneys for both Smith and the government returned to the subject of Agee's conversation with the police prior to his arrest. Smith's counsel argued that the jury should consider Agee's "testi[mony] that he did not advise the police as to what happened in the car." The prosecutor reviewed Agee's account of what he did and did not tell the police prior to his arrest:

> Did he not, when he, intentionally knowing that these were narcotics, hide the narcotics from the police, went back to the police car and attempted to diver [sic] the police from finding the narcotics instead of saying to the police, "Hey, that guy has dope. Arrest him," when he conceals the narcotics from the police with the intention of giving them back to Smith, knowing that in all probability Smith is going to sell them?

Agee contends that these were "references to and comments on [his] exercise of his right to remain silent [and] were improper and require a new trial." Br. for Appellant at 12–13.

The government has urged that this court may not consider Agee's Fifth Amendment claim, because Agee did not object at trial to the questions and to the parts of the summation which purportedly referred to Agee's "silence" prior to his arrest. The record reveals that prior to the trial, Agee's attorney had made a motion to exclude questions regarding the "defendant's silence at the time of arrest." The district court declined to rule on the motion *at that time.* However, the court stated that during the trial, it would, out of the hearing of the jury, entertain a request for a ruling and that it would give an appropriate instruction regarding the defendant's right to remain silent. During the trial, Agee's counsel failed in each instance to object to the questions and arguments which he now asserts were references to his client's silence at arrest. Because we hold that no error occurred which would have been reversible even if timely objections had been made, we need not consider whether the "plain error" doctrine would have any application to these circumstances.[5]

---

5. We note, however, that the error asserted on this appeal is predicated on the *cumulative effect* of a number of questions asked of Agee and statements made in summation. Had Agee's counsel objected at side bar to any of these questions, the district court—if it found that objection to be meritorious under *Hale* and *Doyle* —could have precluded further questioning or argumentation on this point, perhaps avoiding the cumulative prejudicial effect of which Agee now complains. The failure of Agee's counsel to make contemporaneous objections not only deprived the district court of the opportunity to take remedial action at an early stage, but it also leads to the conclusion that, having originally recognized this issue, counsel made a tactical decision not to object during trial.

## B

In two recent decisions, *United States v. Hale*[6] and *Doyle v. Ohio,*[7] the Supreme Court has considered whether a prosecutor may ask questions or make comments which reveal to the jury that the defendant exercised his right to remain silent *after* his arrest. In *Hale,* a defendant who had been charged with robbery in the district court for the District of Columbia testified that the money which the police had found on his person had been given to him by his wife. The prosecution impeached his testimony by causing him to admit during cross-examination that he had not informed the police of the source of the money at the time of his arrest. The Supreme Court, exercising its supervisory authority over the federal courts, ordered a new trial. It found that in the circumstances of the case, Hale's silence lacked significant probative value and that any reference to it carried with it an "intolerably prejudicial impact."[8]

In the subsequent case of *Doyle v. Ohio,* the defendants testified that they had been "framed" by a government informant.[9] On cross-examination, the prosecutor asked each defendant whether he had told this to the policeman after he arrested them; each replied that he had not. The Supreme Court held that, "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment."[10]

Here Agee argues, like the defendants in *Hale* and *Doyle,* that because he was questioned at trial about his "silence" at the time of his arrest, he should be granted a new trial either under the rule of evidence announced in *Hale* or under the Fifth Amendment.[11] However, the record reveals that Agee, unlike the defendants in the cases considered by the Supreme Court, had not remained *silent* regarding the facts of the crime with which he was charged. Instead, according to Agee's own testimony, he made statements to the police which he knew to be false and which he hoped would prevent them from discovering an ongoing crime. This circumstance distinguishes the present case from *Hale* and *Doyle.*

If Agee had stood mute (as the defendant in *Hale* did)[12] or had asked "what's this all about," and then remained silent (as the defendants in *Doyle* did),[13] perhaps this would be a different case. However, the prosecution in its cross-examination of Agee *did not* open new avenues of inquiry; it merely caused Agee to repeat what he had already admitted in response to his counsel's questions: that he had attempted to deceive the police. In this context, it is clear that the question to which Agee now objects—whether it was "in [his] mind" to inform the police that Smith had dope—was not a reference to Agee's purported silence. Rather, it referred to his admission that what he had in mind when he approached the police and engaged them in conversation was to keep the police from coming up to his car. Moreover, it was this attempted deception, not Agee's "silence," that was emphasized by the prosecutor in her summation, the relevant parts of which are reproduced at the margin.[14]

"Silence" at the time of arrest is the critical element of the Fifth Amendment right on which Agee relies in this appeal.

6. 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).

7. 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

8. 422 U.S. at 180–81, 96 S.Ct. 2240.

9. Doyle and Wood were arrested together but were tried separately. Their appeals were consolidated.

10. 426 U.S. at 619, 96 S.Ct. at 2245 (footnote omitted).

11. *Doyle* involved a state prosecution and was decided under the Fourteenth Amendment. In light of *Hale* and the analysis found in *Doyle,* there is no doubt that the right recognized in *Doyle* applies to federal prosecutions under the Fifth Amendment.

12. *United States v. Anderson,* 168 U.S.App. D.C. 305, 498 F.2d 1038, 1041 (1974), *aff'd on other grounds,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *see also id.* at 1047 n.5 (Wilkey, J., dissenting op.).

13. 426 U.S. at 614–15 n.5, 96 S.Ct. 2240.

14. "Finally, you heard the testimony of George Agee, the defendant, who testified . . . that he picked up the defendant Smith and

The Supreme Court has described that right as "the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' "[15] The rationale which the Supreme Court adopted for its decision in *Doyle* was that it is fundamentally unfair for the prosecution to impose a penalty at trial on a defendant who has exercised that right by choosing to remain silent.[16] The very statement of that rationale demonstrates that *Doyle* can have no application to a case in which the defendant did *not* exercise his right to remain silent.[17] Courts in other circuits have so held.[18]

that when they were stopped by the police, the defendant Smith said, 'I have dope on me,' threw him a package and he, Agee, attempted to hide the package first in the console and, when he couldn't get that open, he hid it under the seat and then he went back to talk to the police officers.

Now, whether or not you believe the defendant Agee's testimony, I suggest to you that even if you accept it, he makes himself guilty of the crime charged. What does he say, even if you believe George Agee, was his intention? To hide those narcotics in his car, to divert the police to conceal that fact from the police so that he could give them back to Mr. Smith and put Mr. Smith out of his car and say, 'I don't want to be involved in this. Go on your way and peddle the dope.'

Did he not, when he, intentionally knowing that these were narcotics, hide the narcotics from the police, went back to the police car and attempted to divert the police from finding the narcotics instead of saying to the police, 'Hey, that guy has dope. Arrest him,' when he conceals the narcotics from the police with the intention of giving them back to Smith, knowing that in all probability Smith is going to sell them? Is he not putting himself in the position of being an aider and abetter of Smith? Is he not making it possible, under Mr. Agee's own testimony, for a narcotics pusher to go out on the street and sell heroin? For if Mr. Agee had not hidden the narcotics, if Mr. Agee's plan had worked, which of course it did not, Mr. Smith would, indeed, have been able to go out and go on his way.

. . . . .

Finally, as I have suggested to you earlier, even if you do believe him, even if you do believe everything the defendant Agee said from that witness stand, didn't he tell you that he took that, that he knew from what Smith said to him that it was dope, that he intended to conceal it? It was not just a split second. He tried to get the console thing open and that wouldn't go and then he got it under the car and then on top of that he went out in the back and tried to divert the police. Wasn't he then helping Smith to keep that narcotics and go back out on the street with it? Didn't he himself by those actions put himself into this scheme, even if you believe Agee's testimony that he didn't see it before,

that for some reason Smith took it out of concealment when the police showed up?"

**15.** *Miranda v. Arizona,* 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1966), *quoting Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

**16.** 426 U.S. at 618–19 & n.10, 96 S.Ct. 2240. *See generally Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Grunewald v. United States,* 353 U.S. 391, 425–26, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (Black, J., concurring op.).

**17.** The fundamental unfairness which the Supreme Court identified in *Doyle* stemmed from the assurance implicit in *Miranda* warnings that the arrestee would not be penalized if he exercised his right to remain silent: "After an arrested person is formally advised by an officer of the law that he has a right to remain silent, the unfairness occurs when the prosecution, in the presence of the jury, is allowed to undertake impeachment on the basis of what may be the exercise of that right." 426 U.S. at 618–19 & n.10, 96 S.Ct. at 2245.

**18.** In *United States v. Warren,* 578 F.2d 1058 (5th Cir. 1978) (en banc), the Fifth Circuit held that the prosecution may elicit testimony that at the time of his arrest, the defendant stated that he represented his companions and that he admonished them to say nothing. The Court recognized that Warren had not exercised his right to remain silent and stated:

"We think it manifest that the admission of this testimony did not constitute a comment on the exercise of the Warrens' right to remain silent. It is only where the accused is amerced for having exercised his constitutional rights that error is committed. This premise is implicit in the fundamental prohibition set out by the Supreme Court,

it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.

*Miranda v. Arizona,* 384 U.S. 436, 468 n.37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966)." *Id.* at 1073.

One difficulty which we have encountered in responding to the dissenting opinion is that it fails to confront either the record in this case or the thrust of the majority opinion. The dissent persists in discussing this case as though it involved comment on Agee's "silence," when, as we have pointed out, even a casual reading of the record reveals that Agee simply did not remain silent regarding the facts of the crime with which he was charged.[19] Therefore—contrary to the characterization given to the majority opinion by the dissent (at pp. 368–369)—we do not find it necessary to decide whether *Doyle* has any application to a case in which the defendant's alleged "silence" occurred *prior* to his arrest and the giving of *Miranda* warnings. It is abundantly clear from this record that Agee did not remain silent.

> In *United States v. Muscarella,* 585 F.2d 242 (7th Cir. 1978), a prosecution witness testified that the defendant had originally declined to waive his *Miranda* rights. The court observed that the defendant had subsequently spoken to the police, and therefore it affirmed the conviction: "in [*Hale* and *Doyle* ] the defendants did in fact exercise their right to remain silent once they had invoked the right, which is not the situation in the instant case." In *United States v. Turner,* 551 F.2d 780 (8th Cir.), *cert. denied,* 431 U.S. 942, 97 S.Ct. 2660, 53 L.Ed.2d 262 (1977), the court declined to order a new trial in a case in which the government had caused the defendant to admit that when he was asked about the crime he had denied any knowledge of it. The court observed that "[a]ppellant's statement to Inspector Robertson amounted to an affirmative denial of any knowledge of the incident, not an exercise of his right to remain silent." *Id.* at 782. *See also United States v. Berdick,* 555 F.2d 1329, 1330–31 (5th Cir. 1977), *cert. denied,* 434 U.S. 1010, 98 S.Ct. 721, 54 L.Ed.2d 753 (1978); *United States v. Venditti,* 533 F.2d 217, 220 (5th Cir. 1976); *United States v. Joyner,* 539 F.2d 1162, 1165 (8th Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593 (1976); *United States v. Riggs,* 537 F.2d 1219, 1221 (4th Cir. 1976). In *United States v. Anderson,* 162 U.S.App.D.C. 305, 498 F.2d 1038, 1043 (1974), *aff'd. on other grounds, United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the court distinguished *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) on this ground:
>> "Even if it could be said that appellant's silence at the police station was inconsistent with his testimony at trial *Harris* would nevertheless be inapplicable in the present circumstances. In *Harris* the accused did not

Here, as we have indicated, the record reveals unequivocally that Agee did not exercise his right to remain silent regarding the facts of the incident. Nor did the prosecutor suggest that he did. Instead, the thrust of her questions and her argument was that Agee made a deliberate choice to lie to the police in order to conceal from them an ongoing crime. If we were to hold that a prosecutor may not question or refer to a defendant's statements and conduct which were designed to deceive the police regarding the commission of a crime, we would be extending the holding of *Doyle* far beyond its rationale. This we decline to do.

### C

A new trial might nonetheless be required here if we were to conclude that the

> exercise his constitutional right to remain silent, but rather spoke, albeit without first being advised of his rights. In the instant case, on the other hand, the accused explicitly availed himself of his right to remain silent. The Supreme Court has proscribed comment by a court or prosecutor on the fact that a defendant did not testify at trial on the ground that such comment 'cuts down on the privilege by making its assertion costly.'
>
> .  .  .  .  .
>
> Nothing in *Harris* undercuts this fundamental constitutional principle since *Harris* did not involve assertion of the constitutional right."

**19.** The dissent suggests that *Doyle* requires that Agee be granted a new trial, despite his admission that he did not remain "silent" at the time of his arrest. The dissent reaches this conclusion on the ground that one of the defendants in *Doyle* did not remain completely silent but asked, "what's this all about," when he was apprehended by the police. However, *Doyle* prohibited questioning and comment regarding a suspect's failure to "speak about *the facts of the case.*" 426 U.S. at 619, 96 S.Ct. at 2245, quoting, *United States v. Hale,* 422 U.S. 171, 182–83, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (White, J., concurring op.) (emphasis supplied). Whereas the defendant in *Doyle* did not make any statement about "the facts of the case," there can be no doubt that Agee's statement—particularly his statement that he didn't have any dope—pertained to the facts of his case. Hence, comment by the government on Agee's testimony regarding his conduct and statements to the police prior to his arrest was not proscribed by *Doyle.*

prejudicial effect of the prosecutor's questions and comments greatly outweighed their probative value. In *Hale,* the Supreme Court concluded that "silence during police interrogation lacked significant probative value . . ." 422 U.S. at 180, 95 S.Ct. at 2138. Evidence that a suspect remained silent after he received *Miranda* warnings is insolubly ambiguous, because it cannot be determined whether he remained silent because he was exercising his Fifth Amendment right or because he fabricated his exculpatory testimony at a time subsequent to his arrest.[20] No such ambiguity is present here, because as Agee's own testimony has shown, Agee did not stand mute nor did he assert his right to do so. Instead, Agee testified that he approached the police and spoke with them, answering when he was asked whether he had any dope. His testimony regarding what he chose to do and say when he approached the police officers provided a context which emphasized the probative value of what he chose *not* to say to the police. Although evidence concerning Agee's actions, statements and omissions prior to his arrest may have required careful evaluation by the jury in light of his exculpatory testimony at trial, it is clear that this evidence did not suffer from the "insoluble ambiguity" which concerned the Supreme Court in *Hale.*

Another factor which leads us to conclude that the prosecutor's questions and Agee's

answers were admissible is that their probative value was not confined to the issue of Agee's credibility. Not only were the prosecutor's questions designed to show that Agee's direct testimony was suspect, but they also bore upon the substantive crime with which he was charged. In *Hale,* the sole purpose of the prosecutor's questions regarding the defendant's post-arrest silence was to suggest that his exculpatory testimony was a recent fabrication.[21] By contrast, here it was certainly relevant to the crime charged to prove that Agee had made a conscious choice between informing the police of an ongoing crime and deceiving them so that they would leave without discovering the heroin.[22]

Whatever prejudice Agee may have suffered from the revelation that he had chosen to conceal an ongoing crime from the police occurred first during his own testimony on direct examination.[23] In view of these circumstances, Agee's reliance on *Hale* is without foundation: the prosecutor's question and argument had probative value and did not violate the holding of *Hale.*[24]

### D

Having concluded that Agee's *Hale/Doyle* arguments fail insofar as they pertain to the government, we turn next to an examination of two isolated references made by Smith's counsel to Agee's "si-

**20.** 422 U.S. at 177, 92 S.Ct. 2133.

**21.** Other courts have distinguished *Hale* and *Doyle* from situations in which a defendant's failure to give information to the government is probative not only of his credibility as a witness but is probative on other issues as well. *See, e. g., United States v. Hiett,* 581 F.2d 1199, 1203 (5th Cir. 1978); *United States v. Joyner,* 539 F.2d 1162, 1164 (8th Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593 (1976).

**22.** *Cf. United States v. Chaney,* 446 F.2d 571, 576 (3d Cir. 1971) ("Defendant Chaney concedes that exculpatory statements made upon interrogation with intent to divert suspicion or mislead the police, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force. *United States v. Smolin,* 182 F.2d 782, 786 (2d Cir. 1950).").

**23.** *See* p. 352, *supra.*

**24.** *United States v. Hale,* 422 U.S. at 180, 95 S.Ct. 2133. Ordinarily it is the district court's role to determine whether the prejudicial impact of evidence outweighs its probative value. *United States v. Long,* 574 F.2d 761, 767 (3d Cir. 1978). In *Hale,* the Supreme Court did not defer to the district court's ruling on the admissibility of the prosecutor's cross-examination because it involved "evidentiary matter [which] has grave constitutional overtones . . ." 422 U.S. at 180, 95 S.Ct. at 2138. However, here we have determined that the prosecutor's questioning of Agee did not violate his Fifth Amendment rights and we have been shown no other basis which would warrant our overturning the district court's admission of this evidence.

lence." Because the issue is barely presented, if at all, by this record, we need not discuss whether *Hale* and *Doyle* are applicable when the reference to a defendant's silence is made by his *co-defendant* rather than by the *prosecutor*.[25] Here the record reveals but one ambiguous question and one reference in argument by Smith's counsel which might arguably be said to implicate Agee's "silence."

During his long cross-examination of Agee, Smith's counsel asked him: "Did you make any statement to the police at any time?" Agee replied, "No, sir." Later, in his summation, Smith's counsel again touched briefly on the question of what Agee did and did not tell the police: [26]

> He [Agee] testified that he did not advise the police as to what happened in the car. All of these are things that have to be taken into consideration in determining the weight of the evidence, the credibility and the truth and the reasonableness of Mr. Agee's story—I'm sorry—testimony.

During the trial, Agee never voiced any objection to either of these remarks which he now construes as comments on his "silence." It was only in his post-trial motion that for the first time he suggested that they might be precluded by *Hale* and *Doyle*.

Even if we were to conclude that these were references to Agee's silence at arrest, we would have reservations about holding that, in the absence of contemporaneous objection, this was plain error.[27]

The only arguable distinction between the questioning and argument by the government, which we have held to be proper, and that by counsel for Smith is that the question which Smith's attorney asked was more broadly framed and did not refer explicitly to Agee's encounter with the police prior to his arrest.[28] However, our review of the record has satisfied us that, in the context of this four-day trial, the jury would have understood and recollected this question and Smith's statement during argument as references to Agee's initial encounter with the police. The direct examination of Agee, all subsequent cross-examination and all references in argument to what Agee stated and failed to state to the police concerned his pre-arrest encounter with the police.

Therefore, we conclude that Agee's argument concerning his co-defendant's comment and question must be rejected under the same analysis which we have previously set forth with respect to the government's

---

**25.** In *Hale* and *Doyle*, it was the prosecutor in each case who questioned the defendants regarding their exercise of their right to remain silent. The Supreme Court did not consider whether similar questioning by counsel for another defendant would have required a new trial.

**26.** Earlier in his summation, counsel for Smith had stated:

> Mr. Agee's testimony was rather interesting and novel and I must say that I have been in this case since February of 1976 and this was the first time I heard that story.

Agee's counsel made an objection to this statement at sidebar on the grounds that: (1) the date on which Smith's attorney entered the case was not in the record, and (2) it characterized Agee's testimony as a "story". No objection was made on any *Hale/Doyle* ground. The court then instructed the jury to disregard the statement because it was irrelevant and was not supported by evidence in the record. Subsequently when ruling on Agee's post-trial motion, the court observed that Agee did not object to the adequacy of this instruction, nor did Agee argue that Smith's counsel had com-

mented on Agee's "silence" prior to trial. In this situation, it is evident that no Fifth Amendment right of Agee's was implicated.

**27.** We have previously discussed our reservations about applying the plain error doctrine to this case, in which Agee's counsel may have made a tactical decision *not* to object at sidebar during the trial, and where objection at an early stage of the trial might have permitted the district court to avoid the *cumulative* prejudice from a number of questions and comments of which Agee now complains. *See* note 5 *supra*.

**28.** The statement by Smith's counsel during summation that Agee testified that he did not advise the police about what had happened in the car is not so broadly framed as his question during cross-examination. The statement during argument seems likely to have been understood as a reference to cross-examination by the government when Agee testified that he had attempted to conceal Smith's possession of heroin from the police. We have held that comment on this testimony was proper.

comments. Agee did not exercise his right to remain silent, and therefore the Fifth Amendment may not be invoked to preclude comment on what he said and failed to say.

Even assuming, however, that the question asked of Agee by counsel for Smith fell within the *Hale/Doyle* proscription, it is clear to us that it was harmless.[29] This is not a case in which repetitive questioning focused the jury's attention on the defendant's silence. *See United States v. Davis,* 546 F.2d 583, 594–95 (5th Cir.), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). Only a single question was involved here, and it was not followed up by counsel for Smith.[30] Moreover, the question was ambiguous, and we do not believe that it was understood and recollected by the jurors as anything more than a reference to Agee's initial encounter with the police. Furthermore, this question did not directly link Agee's purported silence with his exculpatory testimony. Nor do we believe that this single question could have added to whatever adverse inferences the jurors may have drawn from Agee's own direct testimony that he had concealed heroin from the police and lied to them when he was questioned.

A single question, which may or may not have referred to pre-arrest silence and which was not highlighted or followed up in cross-examination or in summation by the prosecutor or Smith's attorney, could not have added to the prejudice which Agee may have suffered as a result of his previous testimony regarding his conduct and his conversation with the police prior to his arrest.[31] In the context of this record and in view of the circumstances to which we have adverted, we hold that there is no reasonable possibility that the lone question asked by Smith's counsel and the statement in his summation contributed in any way to Agee's conviction.

### III

### A

Agee contends that the district court erred when it denied his motion to suppress the heroin which had been seized at the time of his arrest.

Following their arrest, Agee and Smith were charged with possession of heroin with intent to "deliver" in violation of Pa.Stat. Ann. tit. 35 § 780–113 (1977). They moved in the Philadelphia Court of Common Pleas to suppress the heroin. After a hearing, that court found on May 13, 1976 that the testimony of the Philadelphia police officers regarding the circumstances of the arrest was not credible. It therefore ruled that

---

**29.** In *Doyle* the Supreme Court observed that the government had not argued that the use of the defendant's silence "might have been harmless error"; it "accordingly" reversed the conviction without considering whether the error might have affected the result of the trial. 426 U.S. at 619–20, 96 S.Ct. 2240. Similarly, in *Hale,* the Supreme Court stated that the government had not contended that the error was harmless. 422 U.S. at 175 n.3, 95 S.Ct. 2133. We are persuaded and we so hold that violation of the rule announced in *Doyle* will not warrant a new trial if there is no "reasonable possibility that the improperly admitted evidence contributed to the conviction," as there was not here. *Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972).

**30.** In determining whether comment on a defendant's silence was harmless, courts have considered whether the reference was brief and isolated. *See, e. g., United States v. Bridwell,* 583 F.2d 1135, 1139 (10th Cir. 1978); *United*

States v. Davis, 546 F.2d 583, 594–95 (5th Cir.), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). Here, counsel for Smith asked a single question. We have already concluded that the subsequent cross-examination and summation by the government was proper and that Smith's summation did not mention or dwell upon the subject of the one question which Smith had asked concerning Agee's statements. (*See* note 28 *supra*).

**31.** In *United States v. King,* 485 F.2d 353 (10th Cir. 1973), the court held that it was error for the prosecution to elicit testimony that the defendant, after being informed of his *Miranda* rights, had asked to see a lawyer. However, the court held that this error was harmless, because the question was not followed up and the jury had already heard damaging testimony that King had, prior to the giving of *Miranda* warnings, stated to the police "Yes, you made a good catch this time." *Id.* at 360.

the police did not have probable cause to arrest Agee and Smith and that the narcotics seized incident to that arrest must be suppressed. Thereafter their state indictments were nolle prossed.

Subsequently on July 20, 1976, a grand jury in the Eastern District of Pennsylvania returned the present indictment which charged Agee and Smith with possession of heroin with intent to distribute in violation of 21 U.S.C. § 841 (1976). Once again, the defendants moved to suppress the heroin seized in Agee's car.[32] The district court denied the motion, finding that the police had probable cause to arrest both Agee and Smith and that the narcotics were seized while they were in "plain view" of the officers.

Agee contends that the district court erred when it refused his motion to suppress the heroin. He asserts that the doctrine of collateral estoppel barred the government from relitigating the ruling by the Philadelphia Court of Common Pleas. Agee's suggestion that *Ashe v. Swenson*[33] precluded the district court from finding, as it did, that the police had probable cause to arrest Agee is without merit. The United States was not a party to the suppression hearing held in the state court nor were the actions of its officers under consideration in that forum. To hold that a state court determination respecting the conduct of state officials is binding on the United States would extend the *Ashe* doctrine beyond its logical boundaries. *See United States v. Sifuentes,* 504 F.2d 845, 849 (4th Cir. 1974); *United States v. Smith,* 446 F.2d 200, 202 (4th Cir. 1971).[34] Because the district court was not bound by the state court's action, it did not err when at trial it permitted the introduction into evidence of the heroin.

**B**

■ Agee sought to have the district court include in its instructions to the jury the following charge:

> The length of time which a person holds an object is relevant to the issue of knowing and intentional control and thus to legal possession. If you find that a person holds an object only flectingly [sic] and monentarily [sic] and thereby does not form an intent to exercise dominion and control over that object, then you are instructed that you must find that the defendant did not knowingly and intentionally possess that object and you must find the defendant not guilty.

His request was denied. Agee argues that this denial was error which warrants a new trial.

However, we do not agree that the district court erred in refusing Agee's request for charge. The district court correctly instructed the jury regarding the meaning of "possession".[35] The court was not required

---

**32.** The defendants also moved to dismiss the indictment, contending that it was invalid under the Department of Justice's *Petite* policy (*see Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960)) and the double jeopardy clause of the Fifth Amendment. The district court denied the motion. This ruling, not challenged on this appeal, was correct in the circumstances of this case. Successive prosecutions by different sovereigns would not violate the protection against double jeopardy. *See Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Furthermore, the policy of self-restraint described in *Petite* does not extend to a federal prosecution which began after a state prosecution had been nolle prossed.

**33.** 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

**34.** In *Elkins v. United States,* 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960), the Supreme Court held that "[i]n determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."

**35.** In the pertinent portion of its charge, the trial court instructed the jury regard' .g the legal concept of "possession":

> Knowingly means to do an act voluntarily and intentionally and not because of mistake, accident or other innocent reason. The purpose of having the word "knowingly" is to

to illustrate the application of that legal concept by suggesting the particular inference which the defense hoped that the jury would make in this case, nor was it required to use the particular language or form of the charge suggested by Agee.

### C

■ Agee also contends that the district court judge made statements in the presence of the jury which implied that Agee would incriminate or perjure himself if he testified in his own behalf. Agee claims that he was deprived of a fair trial because his testimony was singled out for cautionary comment by the court.

After Agee had taken the oath as a witness, the district court judge questioned him regarding his awareness of his right *not* to testify:

The Court: Mr. Agee, I know that Mr. Turner, of course, has informed you that as a defendant in this case you have absolutely no duty or compulsion to testify and you have your absolute right under the Fifth Amendment to remain silent and I would instruct the jury that they could not hold that against you.

Now, do you understand that by testifying, however, you are subjecting yourself, obviously, to the same scrutiny as any other witness has and that your testimony is, of course, under oath and my question: Are you voluntarily giving up your privilege, fully understanding your privilege to not testify under the Fifth Amendment?

The Witness: Your Honor, I would like to talk to my lawyer and let him to explain this to me more better so I can clearly understand this.

The Court: Very good. I think you should talk to your client, Mr. Turner.

Mr. Turner: Your Honor, I would object to the remarks of the Court in the presence of the jury. I would request a side bar conference.

The Court: Well, let me just say this on the record. It is my absolute standard procedure whenever any defendant takes the stand that the defendant understands the rights that he is giving up so that there could be no question about that and I don't see any need for a side bar conference.

If you wish to have one, we can have one. However, I think Mr. Agee has requested that he would like to discuss—

Mr. Turner: In that case, I will request a recess, your Honor.

The Court: All right, How long a period will that be?

Mr. Turner: About one minute will be sufficient.

The Court: We can stay here while you discuss matters with Mr. Agee.

Mr. Turner: Mr. Agee, will you step back here, please?

(A discussion takes place which is held off the record.)

The Court: Mr. Agee, you have had an opportunity to discuss the matter I have just set forth with Mr. Turner and will you tell me what your decision is?

The Witness: I intend to take the witness stand, your Honor.

The Court: All right.

We have no doubt that a trial judge may question a defendant who chooses to testify in his own behalf in order to ascertain whether he is doing so with a full awareness of his rights under the Fifth Amendment. A procedure such as the one utilized by the district court here can be valuable in

insure that no one would be convicted for an act done because of mistake or accident or other innocent reason.

Intentionally means that the defendant knowingly did an act which the law forbids.

As I have instructed you, one of the essential elements which the Government must prove beyond a reasonable doubt is that a defendant knowingly and intentionally possessed the heroin.

In order to find that the defendant possessed heroin, the Government must prove that he knowingly had direct physical control over heroin at the time in question or else that he knowingly had the heroin under his control or dominion at the time in question, meaning that he knowingly had the power and intention to exercise dominion or control over the heroin.

exposing beforehand, problems that such a witness may experience if he testifies. However, even though we recognize the value of such a practice, we are also cognizant of the inherent dangers that such an inquiry presents where the court's questioning takes place before the jury.

Here the record reveals that the judge did not excuse the jury nor did he take any other steps to prevent the jurors from hearing his examination of Agee and his colloquy with Agee's counsel. While we approve of the careful consideration which the district court judge gave to Agee's rights under the Fifth Amendment and the concern which he exhibited, we are severely troubled by the manner in which the court implemented this procedure.

■ Although we indicate in our later discussion that the district court judge's comments could not have affected Agee adversely inasmuch as Agee in fact did testify, we are nevertheless convinced that better practice requires that any such inquiry, no matter how solicitous of a defendant's rights, must be conducted with the jury not present. Excusing the jury, while time consuming and in some instances burdensome, will nevertheless guard against any unjust or improper inference being drawn by the jury especially if the defendant elects not to testify—an inference which may not be fully dispelled by a cautionary instruction. Thus, we will require that henceforth all such questioning and discussion be held outside the jury's presence or in such a fashion that the jurors cannot hear the colloquy.

Despite our disapproval of the district court's practice in this case, we nonetheless conclude that there is no reasonable possibility that the trial court's questions contributed to Agee's conviction. *See Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). Here, nothing in the district court judge's remarks could lead a reasonable juror to conclude that the judge believed that Agee's testimony would be incriminating or perjurious. Indeed, the only reasonable inference which the jury could draw from the court's remarks was that Agee had made a free and voluntary decision to testify, as indeed he had. Such a decision to testify could well have impressed the jury favorably.

We observe that this case presents circumstances far different from those presented in *Webb v. Texas*[36] and *United States v. Morrison.*[37] In *Webb,* the trial judge admonished a prisoner who had been called as a witness for the defense regarding the dangers of perjury, assuring him that if he were convicted of that crime he would not be eligible for parole. The witness thereupon refused to testify. The Supreme Court held that the defendant had been deprived of his right to put on a defense. In this case, however, no reference was made by the court to the possibility that Agee would perjure himself,[38] nor did the court's comments prevent Agee from taking the stand.

In *Morrison,* the prosecution informed a defense witness prior to the trial that, if she

**36.** 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972).

**37.** 535 F.2d 223 (3d Cir. 1976).

**38.** The Supreme Court observed in *Webb* that the trial court "did not stop at warning the witness of his right to refuse to testify," 409 U.S. at 97, 93 S.Ct. at 353, but instead added the following admonition:

"If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [sic] is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on

the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking."

*Id.* at 96, 93 S.Ct. at 352.

testified, she might implicate herself in the crime. When she was called as a witness by the defendant, she refused to answer many of the questions put to her by defense counsel on the ground that they might incriminate her. We held there that the prosecutor had interfered with the defendant's right to have his witness give evidence in his favor. By contrast, here Agee was not deterred from giving evidence in his own behalf and no threats of further prosecution were made by the government.

The circumstances which led to the reversal of the convictions in *Webb* and *Morrison* —in *Webb,* a statement by a trial judge that he would make certain that a defense witness was prosecuted if he perjured himself; and in *Morrison,* a statement by a prosecutor that it would not be in a witness's interests to testify for the defense, leading in both cases to a refusal by a key defense witness to give testimony—are just not present here.[39] Indeed, as we have previously indicated the only inference which the jury could reasonably have drawn from the court's questioning and statements was that Agee, having been informed of his rights by the court's neutral questioning, was testifying of his own free will, voluntarily and without any government compulsion. In such a situation, we perceive no reasonable possibility that the court's action contributed to Agee's conviction.

The dissenting opinion agrees that the questioning of a witness regarding his knowledge of his Fifth Amendment rights must be done outside the jury's presence. To that extent, we are unanimous. What disagreement the dissent does register is with our conclusion, based on our review of the record, that this error was harmless. The dissent apparently disagrees, because it would grant a new trial. The short answer to that suggestion is that a majority of this court has reviewed the record and has concluded that there is no reasonable possibility that the trial court's questions contributed to Agee's conviction. *See Schneble v.*

*Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

## IV

The judgment of sentence will be affirmed. We will also affirm the order which denied Agee's motion for judgment of acquittal or a new trial.

GIBBONS, Circuit Judge, with whom Circuit Judges ALDISERT and HIGGINBOTHAM join, dissenting:

George Agee, convicted of possession of heroin in violation of 21 U.S.C. § 841, on appeal urges a number of grounds for a new trial, all of which are rejected by the majority. Two of those grounds, however, are meritorious.

## I. THE TRANSACTION

Agee and codefendant Andrew Smith were arrested by the Philadelphia police on February 12, 1976. They were indicted for violating 21 U.S.C. § 841, and tried jointly. In that trial Philadelphia police officers Michael Zagursky and Robert Wissman testified that on that morning they stopped an automobile for making two turns without signalling. Officer Wissman approached the driver's side of the stopped automobile, where Agee was seated, and Zagursky approached the passenger's side, where Smith was seated. Both officers testified that, while approaching the front of the car, they saw foil packages containing glassine packets of tannish-white powder. One package was on the floor of the car immediately in front of Smith. The other was in the hands of Agee, who, according to Wissman, was attempting to shove it under the car seat. Wissman testified that he then removed Agee from the car and arrested him for possession of what the officer believed to be heroin. After making the arrest, Officer Wissman retrieved the packages from the floor of the car at the edge of the seat and between the brake pedal and the seat  The packets were later found to contain a mix-

---

**39.** In both *Webb* and *Morrison,* the admonitions to witnesses occurred out of the presence of the jury. In *Webb,* the jury was excused; in *Morrison,* the discussions with the witness took place in the prosecutor's office.

ture of heroin, quinine, procaine, and reducing sugar.

Agee testified on his own behalf, while Smith did not. Agee stated that on the day of his arrest he was driving an unlicensed taxicab and that he had picked up Smith, whom he did not know, as a passenger. He testified that he drove Smith to one location, waited for him, and, at Smith's request, started to drive him back to the spot where he had first picked him up. The unlicensed taxicab had a defective brakelight. According to Agee's testimony, when the police stopped the car, Smith threw one tin foil packet at him and said "I have dope on me." Agee claimed that he had no prior knowledge of Smith's possession of narcotics. Agee tried unsuccessfully to conceal the packet in the console compartment of the car and finally thrust the packet under the seat. He then left the car and walked to its rear, where he said to one of the officers, "I know why you're stopping me, because I don't have any brakelights." When the officer asked him if he had any weapons or narcotics, he answered negatively. The officer searched him, and then searched the car. In the latter search the officer found the packets referred to above.

## II. TRIAL REFERENCES TO AGEE'S SILENCE

At the outset of the joint trial, obviously anticipating that his client would take the stand, Agee's attorney called to the district court's attention the decision of the Supreme Court in *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). He asked for a preliminary ruling that the appellant's silence at the time of arrest was inadmissible for any purpose and that such silence should not be the subject of any inquiries or comments during the course of the trial. When asked by the trial judge to explain why he was raising the issue early in the trial, counsel answered:

> Well, your honor, I don't want it to arise during the proceedings when the jury is in the box.

Appellant's Appendix, at p. A–151. When the court declined to rule on the issue in advance, Agee's counsel repeated his request:

> [W]hen they [the arresting officers] made the arrest, it's my understanding that no statements were made by Mr. Agee.
>
> I would respectfully request that the Court bar questioning either on direct or cross examination on that specific point by either counsel for the Government or my co-counsel, Mr. Gershenfeld. Once again, under Hale, your Honor, I believe it would be blatantly inadmissible.

Appellant's Appendix, at p. A–156. The court responded to counsel's request as follows:

> Well, the fact that no statement was made, the jury is certainly going to be appropriately instructed and you can have the appropriate instruction when it goes to the jury that the fact that no statement was made cannot in any way be taken as evidence of any admission, that he has an absolute right to be silent, so forth and so on.

Appellant's Appendix, at pp. A–156–57. Agee's counsel persisted in seeking to prevent questioning at trial on the subject of Agee's silence at the time of arrest. However, the district judge ruled that only at such time as a specific question regarding Agee's silence was asked would he rule on counsel's objection.

Counsel for the government and for co-defendant Smith were present during this colloquy, in which the court in effect ruled that they could at least inquire, in the presence of the jury, about Agee's silence at the time of arrest. During the course of the trial both lawyers took advantage of this ruling.

The majority makes much of counsel's failure to object at every stage of the line of interrogation which the court, after repeated objection, actually invited. Opinion, *post* at 353 n. 5. To say, as the majority does, that this failure reflects a tactical decision not to object during trial, is patently unfair to conscientious counsel who made every reasonable effort to prevent refer-

ence to his client's silence, and who forewarned the court and counsel. To say that the district court was deprived "of the opportunity to take remedial action at an early stage" is, considering the colloquy quoted above, a misstatement of the record. For two reasons the majority's argument about the need for a simultaneous objection should be rejected.

In the first place, the objection was made quite explicitly at the outset of the case. Agee's counsel pointed out that it would be improper for the government or for codefendant's counsel to inquire about or comment upon the subject matter in the presence of the jury. All of the participants in the trial were aware of Agee's objection. Instead of ruling that no such inquiry should be made, the district court in effect permitted the attorneys for the government and for Smith to ask the question and to put Agee in the position of objecting before the jury. Under these circumstances the policy behind the simultaneous objection rule of affording the opportunity to avoid error is not implicated. Everyone involved in the case was forewarned and, consequently, the error could have been avoided. It requires extraordinary suspension of perception to treat the trial court's ruling as anything but a plain invitation to trespass in a forbidden evidentiary area. Secondly, even in cases where no objection whatsoever was made, it has been held repeatedly that prosecutorial utilization of the defendant's silence is plain error. *E. g., United States v. Harp,* 536 F.2d 601, 602 (5th Cir. 1976); *United States v. Arnold,* 425 F.2d 204, 206 (10th Cir. 1970); *United States v. Nolan,* 416 F.2d 588, 594 (10th Cir.), *cert. denied,* 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1969); *United States v. Brinson,* 411 F.2d 1057, 1059 (6th Cir. 1969). *Cf. United States v. Anderson,* 162 U.S.App. D.C. 305, 498 F.2d 1038, 1040–44 (1974), *aff'd sub nom. United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (cross-examination of defendant with regard to silence at time of arrest not harmless error).

Smith's counsel's obvious strategy was to convince the jury that Agee, the car owner, rather than Smith, the passenger, possessed the heroin. Consequently, on cross-examination Smith's counsel questioned Agee:

Q. Did you make any statement to the police at any time?

A. No, sir.

Appellant's Appendix, at p. A–254. Later, in his closing argument to the jury, Smith's counsel argued that Agee's silence about the narcotics in his car impeached his credibility at trial.

He [Agee] testified that he did not advise the police as to what had happened in the car. All of these are things that have to be taken into consideration in determining the weight of the evidence, the credibility and the truth and the reasonableness of Mr. Agee's story—I'm sorry—testimony.

Appellant's Appendix, at p. A–279.

The Assistant United States Attorney's cross-examination of Agee included the following dialogue:

Q. You had in mind that you could straighten it out with the police back in the rear of the car about your brakelights and then go on your way. Is that right?

A. No, had in mind straightening that out and not just going on my way, no.

Q. Well, what was in your mind?

A. What was in my mind? If I could get out of the policemen not giving me a ticket I was going to tell Smith to take his stuff and get out of my car. That's what was in my mind.

Q. But it wasn't in your mind to say to the police, "That man in my car has dope. Arrest him"?

A. No, ma'am.

Appellant's Appendix, at pp. A–255–56. In her closing argument, the Assistant United States Attorney went even further than Smith's counsel had gone in arguing the importance of Agee's silence at the time of his arrest. The government attorney contended that Agee's silence was affirmative evidence of Agee's commission of the charged offense.

·Now, whether or not you believe the defendant Agee's testimony, I suggest to you that even if you accept it, *he makes himself guilty of the crime charged.*

.    .    .    .    .

Did he not, when he, intentionally knowing that these were narcotics, hide the narcotics from the police, went back to the police car and attempted to divert the police from finding the narcotics *instead of saying to the police, "Hey, that guy has dope. Arrest him,"* when he conceals the narcotics from the police with the intention of giving them back to Smith, knowing that in all probability Smith is going to sell them? Is he not putting himself in the position of being an aider and abetter of Mr. Smith.

Appellant's Appendix, at pp. A–266–67 (emphasis supplied).

It has long been an assumption of the law of evidence that a *"failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact."* IIIA Wigmore, Evidence § 1042 (Chadbourn rev. 1970). For a moment I pass the question whether that assumption, when applied to a traffic stop by a Philadelphia police officer of a driver of an unregistered and mechanically defective taxicab, realistically comports with the behavioral expectations of the parties. Applying the assumption to the present case, the government contends that Agee's silence about the presence of the heroin amounted to an affirmative denial of such presence and thus to purposeful concealment of the drugs. Where silence is equivalent to an assertion, that silence becomes relevant to a witness' testimony as a prior inconsistent statement if the assumed affirmation is inconsistent with the witness' present testimony. If offered against a party to the action, that silence is relevant as an admission, regardless of that party's testimony.

In a criminal prosecution, however, there is obvious tension between the rule of evidence treating silence as an affirmation and the constitutional privilege against self-incrimination. For many years in state prosecutions, under the rule of *Twining v. New Jersey,* 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908), the Supreme Court resolved this tension by permitting the defendant's assertion of the privilege against self-incrimination to be used as evidence that the defendant could not, if he testified, deny the charge against him. Such use of a constitutionally protected right to remain silent came to an end in *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), where the Supreme Court held the privilege against self-incrimination applicable to state prosecutions. After *Malloy v. Hogan,* it was clear that since the defendant in a criminal case had a constitutional right to remain silent, his exercise of that right could not be used against him substantively as an affirmation by silence. The privilege against self-incrimination received further support from the Supreme Court's decisions in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which dealt with the circumstances in which actual statements, rather than silence, would be excluded.

In *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Court held that although an actual statement obtained in violation of *Miranda* could not be used as substantive evidence against the defendant, it could be used for impeachment purposes as a prior inconsistent statement if the defendant testified in a manner inconsistent with that prior statement. After the decision in *Harris v. New York,* the courts of appeals divided on the question whether, despite the rule of *Malloy v. Hogan,* an affirmation by silence could be used for impeachment purposes when the defendant took the stand at his trial.[1] The

---

**1.** *Compare United States v. Semensohn,* 421 F.2d 1206, 1209 (2d Cir. 1970); *United States v. Brinson,* 411 F.2d 1057, 1060 (6th Cir. 1969); *Fowle v. United States,* 410 F.2d 48 (9th Cir. 1969); and *Johnson v. Patterson,* 475 F.2d 1066 (10th Cir.), *cert. denied,* 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973), *with United States ex rel. Burt v. New Jersey,* 475 F.2d 234 (3d Cir.), *cert. denied,* 414 U.S. 938, 94 S.Ct. 243, 38 L.Ed.2d 165 (1973); and *United States v. Ra-*

Supreme Court resolved this conflict in *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), and *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 48 L.Ed.2d 91 (1976). In *Hale* the Court held that the defendant's post-arrest silence could not be used even for impeachment purposes. The Court reasoned, first, that the defendant's silence was not sufficiently probative of an inconsistency with his in-court testimony to warrant admission of the silence as impeachment evidence. 422 U.S. at 177, 95 S.Ct. 2133. In addition, the Court believed that admitting into evidence the defendant's post-arrest silence would be highly prejudicial. *Id.* at 180, 95 S.Ct. 2133. The decision in *Hale* applied only to federal prosecutions. However, in *Doyle* the Court held that the rule excluding even the impeaching use of such silence was constitutionally required and therefore binding on the states. If, as *Hale* and *Doyle* hold, a defendant's silence cannot be treated as a prior inconsistent statement for impeachment purposes, *a fortiori* it cannot be used substantively as an admission tending to prove the commission of the offense.

Agee testified that he did not report Smith's possession of the heroin because he did not think that the police would believe him and because he wanted to speak to an attorney before making a statement. He acknowledged that he was aware that contraband was in his car. There is no inconsistency between Agee's trial testimony and his silence as to Smith's possession of narcotics. Indeed the government does not urge that Agee's silence was admissible on impeachment grounds, even though counsel for codefendant Smith argued as much to the jury. Rather, the government argues, as it did to the jury, that Agee's silence was admissible as substantive proof that Agee was an accessory to Smith's offense of possessing heroin with intent to sell. This argument is based upon 18 U.S.C. § 2(a):

> *Whoever* commits an offense against the United States or *aids, abets,* counsels, commands, induces or procures it commission, *is punishable as a principal.*

(Emphasis supplied). By failing to tell the police of Smith's possession, the government argues, Agee aided and abetted Smith's possession, even though Agee believed that disclosure would tend to incriminate himself because the police would not believe his version of the facts. In effect, the government takes the position that anyone having knowledge of any offense which is ongoing in nature, such as a possessory offense, becomes a principal in that offense if he does not immediately disclose the offense, even though such disclosure might tend to incriminate him. Appellee's Brief, at p. 8. I have no difficulty with such a construction of 18 U.S.C. § 2(a) when a defendant takes active steps to conceal the crime. Thus I think that it was proper to argue to the jury that by moving to the rear of the car Agee may have intended to divert attention from the contraband. But here the government went further and argued the silence alone was criminal. So construed, 18 U.S.C. § 2(a) would run afoul of the fifth amendment guarantee against self-incrimination, for resort to silence would be penalized criminally. I do not so construe the statute.

The government also urges that the use to which Agee's silence was put falls outside the *Hale-Doyle* prohibition because in those cases the silence referred to occurred after the defendant's arrest and after he was given *Miranda* warnings, while in this case the silence occurred prior to arrest and prior to any *Miranda* warnings. It is true, as the government urges, that *Hale* and *Doyle* dealt only with post-arrest and post-*Miranda* warning silence.[2] Nevertheless, I

---

mirez, 441 F.2d 950, 954 (5th Cir.), *cert. denied*, 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971). These cases are collected in Justice Marshall's opinion for the Court in *United States v. Hale*, 422 U.S. 171, 173 n.2, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). It should be noted that among those cases referred to and tacitly overruled by *Hale* is *United States ex rel. Burt*

v. New Jersey, 475 F.2d 234 (3d Cir.), *cert. denied*, 414 U.S. 938, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973).

**2.** *See United States v. Hale*, 422 U.S. 171, 177, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Doyle v. Ohio*, 426 U.S. 610, 617–18, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

do not believe that the result should be any different here. For one thing, there is at least a serious ambiguity about Agee's status at the time of his silence referred to in the government's cross-examination and closing argument. On the government's evidence, Agee was subjected to a full body search immediately after the traffic stop. Accordingly, at the time of his silence, Agee might have been subject to constraints imposed by the police officers, thereby triggering even the narrowest application of *Hale* and *Doyle*. If, at the time of his silence, Agee was in the custody of the policemen, the fact that *Miranda* warnings may not have been given does not preclude the application of the rule enunciated in *Hale* and *Doyle*.[3] In addition, while the prosecutor's comments were arguably restricted to the time frame prior to the appellant's arrest, Smith's counsel's comments were certainly not so restricted. Thus, the conduct of Smith's counsel might put this case squarely within the proscription of *Hale* and *Doyle*. More importantly, the government is flatly wrong in contending that anything turns on the presence or absence of custody or of the presence or absence of *Miranda* warnings. Its attempt to rely on these factors misstates the issue and attempts to treat a proposed exception to the general applicability of the fifth amendment as if it were the rule. *Hale* and *Doyle* are not the rule. Rather the rule appears in fifth amendment cases like *Malloy v. Hogan*. *Hale* and *Doyle* simply refused to extend the *Harris v. New York* exception of impeaching use to silence. Neither *Hale* nor *Doyle* suggests that the possibility of substantive rather than impeaching use of such silence was ever contemplated by the Court. Allowing substantive use of silence not only would circumvent the holdings of *Hale* and *Doyle*, but also would amount to overruling *Malloy v. Hogan* and reviving *Twining v. New Jersey*.

As I read its opinion in this case, the majority apparently agrees that the government's argument as to § 2(a) and as to the inapplicability of *Hale* and *Doyle* to pre-arrest, pre-*Miranda* silence is mistaken. It admits, albeit tacitly, that mere silence when having knowledge of another's crime is not evidence of an offense. Similarly, it acknowledges, again implicitly, that the *Hale-Doyle* prohibition covers silence which precedes arrest and the administering of *Miranda* warnings. We part company, then, simply over an interpretation of the record, which the majority reads as disclosing no comment on silence, but only comment on speech or action.

I do not believe that, fairly read, the prosecutor's argument at trial can be understood as anything but an assertion to the jury of the same point that the government advances on appeal—that silence by a person having knowledge of a possessory offense is itself a crime under § 2(a). It is one thing for the majority tacitly to reject that argument. It is quite another to refuse to take government counsel at her word about her intention in making the argument to the jury. The very argument made in this appeal belies the majority's overgenerous treatment of the record.

Besides ignoring the government's stated purpose in examining Agee's failure to offer exculpatory remarks, the majority also concludes that the prosecutor's statements referred only to Agee's actions and words, and not to his silence. In so holding, the majority notes that Agee did not remain mute when the police encountered him.

> But in *United States v. Hale*, 422 U.S. 171, 177 [95 S.Ct. 2133, 45 L.Ed.2d 99] (1975), we noted that silence at the time of arrest may be inherently ambiguous *even apart from the effect of Miranda warnings*, for in a given case there may be several explanations for the silence that are consistent with the existence of an exculpatory explanation.
> (Emphasis supplied).

---

**3.** In his dissent in *Doyle*, Justice Stevens seemed to think that the majority's rule was premised on the presence of *Miranda* warnings. *See* 426 U.S. at 620–21, 96 S.Ct. 2240 (Stevens, J., dissenting). We do not read *Doyle* in that way. In both *Hale* and *Doyle* the *Miranda* warnings were but one factor that convinced the Court that the defendant's silence was not sufficiently probative. *See Doyle, supra,* at 617 n.8, 96 S.Ct. 2240, 2244, wherein the Court declared:

Rather, "he made statements to the police which he knew to be false and which he hoped would prevent them from discovering an ongoing crime." Opinion, *supra* at 354. Yet, as the majority acknowledges, the *Hale-Doyle* rule does not apply only when a suspect remains mute. In *Doyle*, after all, the defendant was by no means totally "mute" when he was interrogated by the police. Indeed, he stated "What's this all about," as if to deny knowledge of the underlying events. 426 U.S. at 614 n.5, 96 S.Ct. 2240. Even so, the prosecutor's comments on Doyle's failure to protest his innocence were judged reversible error.[4]

The majority apparently recognizes that the *Hale-Doyle* rule does not require total silence. "If Agee . . . had asked 'What's this all about,'" the majority suggests, "perhaps this would be a different case." Opinion, *supra* at 354. Why should it be a different case? In both instances the jury is asked to speculate on the substantive significance of a failure to speak. Where, as here, the government's remarks are, by its own admission, directed at the substantively incriminating character of a defendant's silence, I do not see how the precise words spoken by the defendant, when first encountered by the police can be said to make a difference.

The majority also concludes that the remarks of Smith's counsel did not transgress Agee's rights under *Hale* and *Doyle*. It relies, in part, on the failure of Agee's attorney to make a contemporaneous objection, as well as its belief that the challenged statements referred to actions and not true silence. I have explained above why these positions are without merit. The majority further contends that any violation which Smith's attorney may have caused was harmless. From this record, however, it is clear that Agee's failure to exculpate himself was significant to the government's

case. I cannot say, therefore, that there was not "a reasonable possibility that the improperly admitted [testimony] contributed to the conviction . . . ." *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972).

Because of its myopic approach to the record and its niggardly reading of *Doyle*, the majority, insisting that there was no comment on silence, does not address the question whether, *Hale* and *Doyle* aside, the circumstances disclosed in this record present an appropriate case for the application of the evidentiary rule equating silence with affirmation. I do not believe they do. The rule is usually justified in terms of behavioral expectations. In other words, common human experience suggests that people generally will deny false accusations and will fully disclose facts when making formal disclosures, as in testimony or pleadings. *See* IIIA, Wigmore, Evidence § 1042 (Chadbourn rev. 1970). But common human experience does not suggest that a driver of an illegal taxicab stopped by a Philadelphia police officer for what the driver thought was a motor vehicle violation, and confronted, according to his testimony, with the unexpected knowledge that his vehicle contained contraband and with an inquiry about guns and drugs in his possession, would react by volunteering any more information than was volunteered here. It seems to me as likely as not that the reaction would be to say as little as possible. In addition, prior to arrest it is less likely that a defendant will be confronted with a formal accusation of guilt. Absent such an accusation, a defendant's silence is highly ambiguous. For both of these reasons, the inference sought to be drawn from silence here was not sufficiently reliable to be properly admissible as substantive or impeachment evidence, even apart from any fifth amendment problems.

---

4. *See also United States v. Edwards*, 576 F.2d 1152 (5th Cir. 1978) (per curiam). In *Edwards*, the defendant was stopped by a border guard while allegedly driving a stolen car. Defendant initially provided a false identity to the border police; had that identity truly been his, the defendant would not have been in violation of the law, since the car was rented with a credit card belonging to the person whose name was used. In short, the defendant, by initially invoking a false identity, effectively denied having violated the law. Despite the defendant's "speech," in the majority's sense of the word, the Fifth Circuit regarded the *Doyle* issue as squarely presented. Only the harmless error doctrine precluded a reversal in the case.

Since both the prosecutor and counsel for codefendant Smith made improper references to Agee's silence in cross-examination and in oral argument to the jury, the judgment of conviction should not stand.

## III. THE DISTRICT COURT'S ADMONITION ABOUT THE PRIVILEGE AGAINST SELF–INCRIMINATION

Immediately after Mr. Agee took the stand and was sworn, the following colloquy took place:

The Court: Mr. Agee, I know that Mr. Turner, of course, has informed you that as a defendant in this case you have absolutely no duty or compulsion to testify and you have your absolute right under the Fifth Amendment to remain silent and I would instruct the jury that they could not hold that against you.

Now, do you understand that by testifying, however, you are subjecting yourself, obviously, to the same scrutiny as any other witness has and that your testimony is, of course, under oath and my question: Are you voluntarily giving up your privilege, fully understanding your privilege to not testify under the Fifth Amendment?

The Witness: Your Honor, I would like to talk to my lawyer and let him to explain this to me more better so I can clearly understand this.

The Court: Very good. I think you should talk to your client, Mr. Turner.

Mr. Turner: Your Honor, I would object to the remarks of the Court in the presence of the jury. I would request a side bar conference.

The Court: Well, let me just say this on the record. It is my absolute standard procedure whenever any defendant takes the stand that the defendant understands the rights that he is giving up so that there could be no question about that and I don't see any need for a side bar conference.

If you wish to have one, we can have one. However, I think Mr. Agee has requested that he would like to discuss—

Mr. Turner: In that case, I will request a recess, your Honor.

The Court: All right. How long a period will that be?

Mr. Turner: About one minute will be sufficient.

The Court: We can stay here while you discuss matters with Mr. Agee.

Mr. Turner: Mr. Agee, will you step back here, please?

(A discussion takes place which is held off the record.)

The Court: Mr. Agee, you have had an opportunity to discuss the matter I have just set forth with Mr. Turner and will you tell me what your decision is?

The Witness: I intend to take the witness stand, your Honor.

The Court: All right.

Agee urges that the likely inference a juror would draw from singling him out for such interrogation was that his testimony would either incriminate him or be perjurious. The government contends, on the other hand, that if the interrogation had any effect at all, "it is likely that [it] enhanced Agee's credibility by emphasizing the voluntary nature of his testimony." Appellee's Brief, at p. 14. The majority is not so naive as to accept the contention that Agee's credibility was enhanced. It finds, instead, a neutral effect. I think that Agee's version of the probable effect on a juror is far more likely than either the government's or the majority's. The purpose of the trial court's remarks, in my view, was far from neutral. It was intended, I believe, to discourage Agee from testifying. If the jury so understood it, the interrogation certainly was prejudicial. Since such questioning of the defendant may be prejudicial and since I can think of no reason why any defendant represented by able counsel should be subjected to it in the presence of the jury, I strongly disapprove of the practice. Even the majority finds it hard to justify. It is true that a trial judge may, and sometimes even should, warn a witness of his fifth amendment rights and of the dangers of perjury. But he cannot, by such warnings to a witness, tilt the scales of justice

against the defendant. *See Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (trial judge's extended warning to defense witness not to lie discouraged the witness from testifying and denied the defendant the opportunity to present witnesses in his defense). When the witness is a defendant who is represented by able counsel and who is about to testify on his own behalf, the need for any such warnings seems to me non-existent. Despite its acknowledgment that engaging in such interrogation is bad practice, the majority strains to distinguish the governing case law, thus giving trial judges a blueprint for the partial evasion of the holding in *Webb v. Texas.* I find particularly disingenuous the majority's distinction of *Webb* on the basis of an ostensible absence in this case of a reference to possible perjury. To what else was the trial court referring when he warned Agee "Now, do you understand . . . that your testimony is, of course, under oath. . . ."? None of the government witnesses was given such a warning. I understand it, and the jurors undoubtedly understood it, as a particular admonition that the defendant should resist the temptation to commit perjury.

While the majority cannot quite bring itself to endorse the trial court's practice of warning testifying defendants, in the presence of the jury, about the privilege against self-incrimination and the dangers of false swearing, it cannot, either, bring itself to order a new trial. Tongue clicking over bad practices has become a familiar routine in this court. *E. g., United States v. LeFevre,* 483 F.2d 477, 478 80 (3d Cir. 1973); *United States v. Benson,* 487 F.2d 978, 981 82 (3d Cir. 1973); *United States v. Somers,* 496 F.2d 723, 736-42 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974); *United States ex rel. Perry v. Mulligan,* 544 F.2d 674, 678-80 (3d Cir. 1976), *cert. denied,* 430 U.S. 972, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977); *United States v. DeRosa,* 548 F.2d 464, 469-72 (3d Cir. 1977); *United States v. Gallagher,* 576 F.2d 1028, 1041–43 (3d Cir. 1978). Our tongue clicking over improper argument by government counsel has been notoriously ineffective in

preventing it, as the persistent need to resort to gentle chastisement amply demonstrates. Bland expressions of disapproval of improprieties and tepid endorsements of "the better practice" are no substitute for the exercise of appellate judicial responsibility. I would grant a new trial.