

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-2-2009

# USA v. Humbert

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1492

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Humbert" (2009). *2009 Decisions.* Paper 1085.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1085

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1492
_____

UNITED STATES OF AMERICA

v.

ERIC HUMBERT,
a/k/a
BASIL

Eric Humbert,

Appellant

On Appeal from the United States District Court
for the District of Eastern Pennsylvania
(No. 04-cr-00192-2)
District Judge: Honorable R. Barclay Surrick

_____

No. 07-3368
_____

UNITED STATES OF AMERICA

v.

ERIC HUMBERT,

Appellant

On Appeal from the United States District Court

for the District of Eastern Pennsylvania

(No. 04-cr-00506-1)

District Judge: Honorable Berle M. Schiller

Argued May 28, 2009

Before: FISHER, CHAGARES, AND COWEN, Circuit Judges.

(Filed:  July 2, 2009)

OPINION OF THE COURT

Christopher G. Furlong (Argued)
22 East Third Street
Media, PA 19063

*Counsel for Appellant*

Kevin R. Brenner (Argued)
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

*Counsel for the United States*

CHAGARES, Circuit Judge.

Eric Humbert ("Humbert"), appeals six issues arising from his criminal convictions for armed bank robbery (Case No. 05-1492) and carjacking (Case No. 07-3368).  We will affirm.

I.

Because we solely write for the parties, we will only briefly summarize the essential facts.

A. The Carjacking Case (Case No. 07-3368)

At Humbert's trial, the Government introduced evidence of the following. On May 27, 2003, Humbert, along with Kevin Jenkins and Rasheen Jones, drove from Philadelphia to New Jersey in order to steal a car and then rob a bank known as "The Bank." Humbert told Jones to rent a Dodge pick-up truck from Enterprise Rent-A-Car in Upper Darby, Pennsylvania, which was to be used as a "blocker" – a decoy that would block the detection of a second car, which would be carrying the stolen money and the guns used during the robbery.

The three men then drove to Salem County, New Jersey. Humbert and Jones were in the rental truck and Jenkins was in his station wagon. All three men had guns. After they arrived in Salem County, Jenkins parked his car near a Cracker Barrel restaurant and got into the truck with Humbert and Jones. The three men then looked for a minivan that they could steal to use during the bank robbery.

While in Carney's Point, New Jersey, they saw a minivan outside of the home of an elderly couple, Mr. and Mrs. Robinson, and decided they wanted to take it. The Robinsons' home was on a cul-de-sac next to the parking lot for a business called Connectiv. Jenkins and Humbert entered the home, while Jones waited in the truck. Humbert and Jenkins ordered the Robinsons to turn over the keys to the van and their money, then Jenkins tied up Mr. Robinson while Humbert sexually assaulted Mrs. Robinson and tied her up. They then fled the house and took the Robinsons' minivan. Humbert's DNA was recovered from semen on Mrs. Robinson.

3

The plan to rob the bank was abandoned. While Jones was waiting outside of the Robinsons' home, he was approached by a security guard from Connectiv, and then fled to Philadelphia. The security guard wrote down the license plate number of the truck that Jones was driving. Before they drove back to Philadelphia, Humbert and Jenkins left the minivan in a parking lot.

On September 23, 2004, a grand jury in the Eastern District of Pennsylvania returned a superseding indictment charging Humbert with conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371; conspiracy to commit carjacking in violation of 18 U.S.C. § 371; carjacking, in violation of 18 U.S.C. § 2119; and two counts of using and possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c).[1]

Humbert filed several motions to suppress DNA evidence, which were denied. Humbert was convicted of all of the charges against him, and was sentenced to a total of 835 months of imprisonment, a five-year term of supervised release, restitution in the amount of $600, and a special assessment of $500.

B. The Bank Robbery Case (Case No. 05-1492)

---

[1] Jenkins and Jones were charged with conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371; conspiracy to commit carjacking in violation of 18 U.S.C. § 371; and carjacking, in violation of 18 U.S.C. § 2119. Jenkins was also charged with two counts of using and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). Jones pled guilty and Jenkins's trial was severed. He currently has an appeal pending in this Court.

The bank robbery case arises out of three bank robberies that took place between June 2003 and July 2003. On June 20, 2003, Humbert and Shannon Johnson robbed a Fleet Bank in Wynnewood, Pennsylvania. On July 11, 2003, Humbert, Johnson, and Maynard Patterson perpetrated an armed robbery of the Pan Asia Bank in Cheltenham, Pennsylvania. On July 18, 2003, Humbert, Johnson, Patterson, and Joseph Allen perpetrated an armed robbery of a Citizens Bank in Philadelphia, Pennsylvania.

On July 13, 2004, a grand jury in the Eastern District of Pennsylvania returned a superseding indictment charging Humbert with conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371; bank robbery, in violation of 18 U.S.C. § 2113(a); two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d); two counts of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); and the possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Prior to the trial, Humbert filed a motion to suppress DNA evidence. The motion was denied, and Humbert was convicted on all seven counts. He was sentenced to a total of 720 months of imprisonment, five years of supervised release, restitution in the amount of $30,008, and a special assessment of $700.

II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291. Humbert makes six arguments on appeal: (1) in both trials, there was insufficient evidence to conclude that the banks he robbed or conspired to

5

rob were FDIC insured; (2) in both trials, the District Court erred in denying his motions to suppress DNA evidence; (3) in the bank robbery case, the prosecutor improperly vouched for government witnesses; (4) venue was improper in the Eastern District of Pennsylvania in the carjacking case; (5) he is entitled to a new trial in the carjacking case because the District Court questioned two defense witnesses about their Fifth Amendment privileges in front of a jury; and (6) he is entitled to a new trial in the bank robbery case because the District Court improperly admitted Federal Rule of Evidence 404(b) evidence. We will affirm on all of the issues.

III.

Humbert first contends that the evidence at trial was insufficient for the Government to meet its burden to prove beyond a reasonable doubt that the four banks at issue were "banks" within the meaning of the applicable statute, 18 U.S.C. § 2113, because there was insufficient proof that they were FDIC insured. See 18 U.S.C. § 2113(f) ("[T]he term 'bank' means . . . any institution the deposits of which are insured by the Federal Deposit Insurance Corporation."). Although the Government could have presented and perhaps should have presented more evidence on this issue, we ultimately find that it met its burden here.

This Court reviews this issue with regard to the bank robbery case, Case No. 05-1492, for plain error, as Humbert failed to preserve this argument. United States v. Barel, 939 F.2d 26, 37 (3d Cir. 1991). There was no plain error here, as the evidence was

sufficient to show that all three banks — Fleet Bank, Pan Asia Bank, and Citizens Bank — were insured by the FDIC. See Supplemental Appendix (Supp. App.) 40-41, 52-53, 223 (Pan Asia Bank); Supp. App. 86, 222 (Citizens Bank); and Supp. App. 9-11, 221 (Fleet Bank).

We review for sufficiency of the evidence whether the bank in Case No. 07-3368, the carjacking case, was FDIC insured. United States v. Silveus, 542 F.3d 993, 1002 (3d Cir. 2008). This is a "particularly deferential standard of review, [where] viewing the record in the light most favorable to the prosecution . . . [we] determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." Id. (citations and quotation marks omitted). We find that the evidence was sufficient to show that the institution at issue in that trial — The Bank — was FDIC insured, as at trial, an employee of The Bank testified that it was FDIC insured, and this testimony was undisputed. Cf. United States v. McIntosh, 463 F.2d 250 (3d Cir. 1972) (uncontradicted testimony by Assistant Vice President of a bank who was custodian of the charters of the bank that the bank was FDIC insured was sufficient to show that it was).[2]

Humbert also contends that his DNA evidence should have been suppressed.

---

[2]Humbert also argues that, even if this Court finds that the Government did prove beyond a reasonable doubt that the banks were FDIC insured, they were still not "banks" under the statute because the FDIC does not insure against bank robbery. We find this argument meritless.

Humbert's DNA was collected by Pennsylvania in 2003 when he was released from jail after serving time for a robbery offense. This sample was then used as a comparison to DNA recovered from Mrs. Robinson after the carjacking, and was a match. In December 2004, after Humbert was identified as a suspect in the bank robbery and carjacking cases, federal authorities applied for a search warrant for Humbert's DNA. The affidavit in support of the warrant requested a new sample of DNA that could be used to corroborate the match that had been already made, and stated that Humbert's DNA could be used to test against other material that could contain DNA that had been collected from the bank robberies.

Humbert contends that the affidavit was insufficient for two reasons. First, with regard to both appeals, he argues that it relies on the blood sample that had been obtained upon his release from Pennsylvania state prison, but that sample was acquired in contravention of Pennsylvania law. With regard to the carjacking case, Case No. 07-3368, he contends that paragraph 5 of the affidavit contains false information made with reckless disregard for the truth in violation of Franks v. Delaware, 438 U.S. 154 (1978). If this information is excised from the affidavit, Humbert argues, there is no probable cause. We disagree.

In reviewing a suppression motion, "we review the District Court's factual determinations for clear error and exercise plenary review over the application of the law to those facts." United States v. Price, 558 F.3d 270, 276 (3d Cir. 2009) (citation omitted).

8

It was not error to use Humbert's original blood sample to support a probable cause determination to obtain a new sample. Even if his DNA was obtained in violation of Pennsylvania law — an issue which we do not decide — that does not establish a Fourth Amendment violation which should result in its exclusion.[3] Cf. Virginia v. Moore, 128 S. Ct. 1598 (2008) (upholding an arrest made by a police officer that was supported by probable cause even though it was made in violation of state law). The exclusionary rule "forbids the use of improperly obtained evidence at trial." Herring v. United States, 129 S. Ct. 695, 699 (2009). However, "suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." Id. at 698. In Herring, the Supreme Court explained that the exclusionary rule should be used to "deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Id. at 702.

Humbert's DNA was already on file because it had been collected by Pennsylvania authorities upon his release from state prison. FBI Agent Vito Roselli, who wrote the affidavit in support of the warrant to obtain a new sample from Humbert, took no part in obtaining the original sample. Instead, he relied on a sample already contained in a database. There was no evidence that Roselli was "deliberate, reckless, or grossly

---

[3]Humbert, notably, does not argue that a Fourth Amendment violation occurred here.

9

negligent" in relying on the sample, and there was no evidence that there was "recurring or systemic negligence" in how the database was maintained or in how Pennsylvania obtained the samples. Therefore, the sample did not have to be excised from the warrant.

In the carjacking case only, Humbert takes issue with paragraph 5 of the affidavit in support of the warrant, which states:

> Pennsylvania State Police DNA laboratory drew blood from Humbert on January 8, 2003, because he is a convicted sexual offender and a Pennsylvania Megan's Law registrant.

Supp. App. 5. It is undisputed that this was error, as Humbert was neither a convicted sex offender nor a Megan's Law registrant. However, the National Crime Information Center ("NCIC") Database report states that Humbert was registered as a sexual offender with the Megan's Law Unit in Harrisburg.

Under Franks v. Delaware, if a defendant establishes by a preponderance of the evidence that an affiant included "a false statement" that was made "knowingly and intentionally, or with reckless disregard for the truth," in an affidavit in support of probable cause, and the false information is excised from the affidavit and without it, there is no probable cause, the fruits of the search warrant should be suppressed. 438 U.S. at 155-56.

In analyzing the statements here, the District Court concluded that: "As to [p]aragraph 5, I find that the reference to convicted sex offender and a Pennsylvania Megan's law registrant was absolutely wrong, it was false. And it may have even been

10

reckless, but it's not material." Supp. App. 287. The District Court held that there was probable cause even without these statements because it was "established in large part by the match between [Humbert's] previously collected DNA sample with the DNA sample obtained at the crime scene." Supp. App. 231. We find that the statements were not reckless, and that even if they were excised, there was still enough information in the affidavit to support a probable cause finding.

"[G]overnment agents should generally be able to presume that information received from a sister governmental agency is accurate." United States v. Yusuf, 461 F.3d 374, 378 (3d Cir. 2006). However, a defendant may still be able to show that an officer acted recklessly in relying on the information by meeting a two-pronged test. First, he must "show that the information would have put a reasonable official on notice that further investigation was required." Id. If the defendant can establish that this is so, he then "may establish that the officer acted recklessly by submitting evidence: (1) of a systemic failure on the agency's part to produce accurate information upon request; or (2) that the officer's particular investigation into possibly inaccurate information should have given the officer an obvious reason to doubt the accuracy of the information." Id. In making the statement that Humbert was a "Pennsylvania Megan's Law registrant," Roselli was relying on information that he obtained from the NCIC database stating the same. Including this information was not reckless, because Humbert did not show that Roselli should have been on notice that further investigation was required. Agent Roselli's conclusion from this

11

information that Humbert was a convicted sex offender is likewise not reckless. While a Megan's Law registrant does not necessarily have to be a convicted sex offender see 42 Pa. Cons. Stat. Ann. § 9795.1, there is no indication that Roselli should have known to look further, particularly because the information contained in the NCIC database stated that Humbert was a registered sex offender. Therefore, we find that the statements were not reckless. Even if we were to find that they were reckless, however, and should have been excised, the DNA evidence does not need to be suppressed, as we agree with the District Court that the match between Humbert's original DNA sample and the DNA found on Mrs. Robinson establish probable cause to obtain a new sample of Humbert's DNA. See Price, 558 F.3d at 282 ("Probable cause exists if, under 'the totality-of-the-circumstances . . . the issuing magistrate [makes the] practical, common-sense decision [that], given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.") (citation and quotation marks omitted, brackets in original) .[4]

Humbert next argues that he is entitled to a new trial because the prosecutor vouched for the veracity of the Government witnesses during her closing statement rebuttal in the bank robbery case, Case No. 05-1492. We disagree. "Vouching constitutes

---

[4]It is for this reason that Humbert's other contention — that the inclusion of this information was "intended to convey the impression" that "a prior conviction of a sexual nature made it more likely than not that he was guilty of this one as well" — also fails. Appellant Br. at 39.

12

an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." United States v. Walker, 155 F.3d 180, 184 (3d Cir. 1998). Humbert failed to preserve this argument, so we review for plain error. Id. at 187-88. There was no plain error here. The only statement that could arguably be considered vouching is the prosecutor's statement that "there was no motive for any of them [the government witnesses] to identify him [Humbert]." Supp. App. 96. Even if this was considered vouching, there was no plain error here, as this comment did not "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." See Walker, 155 F.3d at 188 (citations and quotation marks omitted).

In the carjacking case, Case No. 07-3368, Humbert argues that venue was improper in the Eastern District of Pennsylvania, where the trial was held, and that proper venue was in New Jersey because that is where the Robinsons lived and where the target bank was located. We disagree. "A defendant in a criminal trial has a constitutional right to be tried in the district in which the crime was committed." United States v. Perez, 280 F.3d 318, 327 (3d Cir. 2002). However, objections to venue can be waived. Id. at 328.

"[A]ny offense . . . begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). See also United States v. Robinson, 167 F.3d 824, 829 (3d Cir. 1999) ("The United States can bring a prosecution in

13

any district where a conspiracy was begun, continued, or completed."). Here, the conspiracy began in Philadelphia, so venue was proper in the Eastern District of Pennsylvania. Supp. App. 109-11 (Jones testified that he and Humbert had guns when they rented a car and drove from Philadelphia to New Jersey). Furthermore, while Humbert did put venue in issue, he never requested a venue jury instruction. Perez, 280 F.3d at 327 (failure to instruct jury about proper venue when venue is alleged without a facially obvious defect is only reversible error if, among other requirements, the defendant "timely requests a jury instruction."). Therefore, this argument is without merit.

Humbert next contends that the District Court committed reversible error in the carjacking case, Case No. 07-3368, because it advised two witnesses, Sean Ferrell and Marcel Harper, of their Fifth Amendment rights in the presence of the jury. We review for plain error as Humbert failed to preserve this argument. United States v. Berry, 553 F.3d 273, 279 (3d Cir. 2009). On direct examination by Humbert, Sean Ferrell testified that he was in jail awaiting a trial on drug and weapons charges. Joint Appendix (JA) 115. After a sidebar where the prosecutor asked the District Court to advise the witness of his Fifth Amendment rights, the following exchange took place between the District Court and Ferrell:

Q: Mr. Ferrell, do you have an attorney?

A: Yes.

Q: And what's his name?

14

A: [The name] . . . .

Q: Did you have a chance to confer with your lawyer regarding testifying in this case?

A: Yes.

Q: And after that conversation with him, it's your decision to testify?

A: Yes.

JA 116-17. Similarly, during his direct examination by Humbert, Marcel Harper testified that he was incarcerated and awaiting trial on a robbery. JA 119. The prosecutor then asked for a similar cautionary instruction to be given to Harper as was given to Ferrell. Id. The following exchange then took place between the District Court and Harper:

Q: Do you have a lawyer, Mr. Harper?

A: Yes, sir, but I don't see him present here today.

Q: Have you talked to your lawyer about testifying in this case?

A: No, he hasn't been to see me.

Q: Well, let me caution you: Do you understand what the Fifth Amendment is, the right not to incriminate yourself?

A: Yes.

Q: So there's going to be some questions asked of you, and you may give answers that may tend to incriminate you. So, the only thing I can advise you is if you want the

15

services of your lawyer, you've got to let me know; otherwise, I'll let you testify, but you may be putting yourself in jeopardy, that's up to you.

A: Okay.

Q: What do you want to do?

A: I'll proceed.

JA 119-20.

In United States v. Agee, this Court held that "questioning of a witness regarding his knowledge of his Fifth Amendment rights must be done outside of the jury's presence." 597 F.2d 350, 363 (3d Cir. 1979). Nevertheless, in Agee, although the District Court questioned the defendant about his Fifth Amendment rights in front of the jury, we held that a new trial was not warranted because there was "no reasonable possibility that the trial court's questions contributed to [the defendant's] conviction." Id. Indeed, "the only inference which the jury could reasonably have drawn from the court's questioning and statements was that [the defendant], having been informed of his rights by the court's neutral questioning, was testifying of his own free will, voluntarily and without any government compulsion." Id. The same inference can be drawn here, especially as Humbert's vague allegations of prejudice do not contain any precise statements of how the verdict was influenced by this questioning.[5]

_____

[5]Humbert also argues that the District Court showed bias when it did not give the prosecution's witness, Rasheen Jones, the same questioning about his Fifth Amendment rights. However, as there was ample testimony that Jones took part in the crime and had

16

Finally, Humbert argues that he is entitled to a new trial in the bank robbery case, Case No. 05-1492, because the District Court failed to instruct the jury that it should disregard a statement from a Government witness that Humbert was involved in another criminal investigation in violation of Federal Rule of Evidence 404(b), which prohibits the introduction of other bad acts unless certain exceptions apply. The testimony was as follows:

Prosecutor: [W]ere you involved as the lead investigator from [sic] an incident on May 27, 2003?

Witness: Yes, I was.

Prosecutor: And during the course of - do you see anyone today who was involved in that investigation?

Witness: Yes, I do.

Prosecutor: And who is that?

Witness: The gentleman in the white shirt sitting off to my right.

The witness identified the man as Humbert. JA 52-53. Humbert failed to object immediately after the relevant questioning, only objecting to a lack of foundation when the prosecutor asked the witness if he had obtained a cell phone number as a result of that

---

received a plea deal from the Government in exchange for his testimony, there was no need to question Jones about his Fifth Amendment rights.

investigation. Therefore, we review for plain error. <u>Berry</u>, 553 F.3d at 279.[6] We find

there was no plain error here because this was a very brief exchange and there is no

indication that it affected the outcome of the trial.

IV.

Based on the foregoing, we will affirm the judgements of conviction.

---

[6]In addition, while the District Court eventually stated that it would strike the testimony, Humbert failed to request that the District Court do so or give a curative instruction when it went back on the record. Supp. App. 67. There was no plain error in the District Court's failure to give a curative instruction.