RESUBMIT BLD-043                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3163
_____

ERIC HUMBERT,
Appellant
v.

WARDEN SCI MAHANOY; AGENCY SPOL, Megan's Law Unit Harrisburg;
ELAINE A. LANGTON, Registered Nurse; PA PAROLE BOARD; PA STATE POL,
Megan's Law Unit; MICHAEL J. KURTZ, Forensic Scientist Supervisor; PAUL J.
EVANKO, Former Commissioner of the Pennsylvania State Police; JEFFREY B.
MILLER, Former Commissioner of the Pennsylvania State Police; FRANK E.
PAWLOWSKI, Commissioner of the Pennsylvania State Police; BENJAMIN
MARTINEZ, Former Chairman of the Pennsylvania Board of Probation and Parole;
CATHERINE C. MCVEY, Chairman of the Pennsylvania Board of Probation and Parole;
JOHN R. TUTTLE, Past and/or Current Director of the Office of Probation and Parole
Services; SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
JAMES C. BARNACLE, Director of the Bureau of Professional Responsibility;
KATHLEEN ZWIERZYNA, Director of the Bureau of Standards and Security;
JANE/JOHN DOE, Corrections Doe's; JOHN/JANE DOE, BPP Doe's; JOHN/JANE
DOE, PSP Doe's; THOMAS W. CORBETT, JR., Attorney General of Pennsylvania
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1:05-cv-01967)
District Judge:  Honorable Sylvia H. Rambo
_____

1

Submitted for Possible Dismissal Due to Jurisdictional Defect, and Pursuant to 28 U.S.C. § 1915(e)(2)(B) or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 18, 2013

Before: SCIRICA, HARDIMAN and GREENAWAY, JR., <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 07, 2013)
_____

OPINION
_____

PER CURIAM

Eric Humbert appeals orders dismissing portions of his third amended complaint and granting summary judgment in favor of the defendants on the remainder. We will affirm.

Humbert is a federal prisoner currently incarcerated in Virginia. In the early 1990s, he was charged with a variety of Pennsylvania offenses, among them two counts of kidnapping. The exact nature of the crime is not as well developed as we might like, but from the various police reports provided by the defendants, it appears that Humbert (along with several accomplices) was accused of participating in a breaking-and-entering robbery that involved removing or confining a mother, a ten-month-old baby, and "two other children." The relevant version of the Pennsylvania kidnapping statute allowed for two different paths to a conviction: 1) if the act was "accomplished by force, threat, or deception"; or 2) if it was accomplished "without the consent of" a parent or guardian for a victim "under the age of 14 years." 18 Pa. Cons. Stat. § 2901(b) (1992). Humbert was

2

charged with both kinds of kidnapping, apparently as separate offenses. He was convicted of the force offense, but was *acquitted* of the "under fourteen" offense.

In late 2002, Humbert was granted parole. At the time, Pennsylvania law required that those convicted of certain crimes provide a DNA sample prior to being released on parole. Thus, in January 2003, Nurse Langton withdrew a blood sample from Humbert for testing and entry into the Combined DNA Index System (CODIS) database. Shortly thereafter, Patrice Schwalm, a parole agent at the Pennsylvania prison where Humbert was incarcerated, was tasked with determining the conditions of Humbert's parole. As part of her analysis, Schwalm determined that Humbert was required to register under Megan's Law; in so doing, she relied upon criminal-history information that showed Humbert's kidnapping conviction and the fact that the offense "involved" a ten-month-old child, but that did *not* reflect his separate acquittal of another kidnapping charge. On March 6, 2003, Humbert (with Schwalm witnessing) signed a Sexual Offender Registration that described his offense simply as "kidnapping," and which contained a lengthy statement about his "sexual offense."

Humbert's time at large was short lived. In 2004, he was indicted in the Eastern District of Pennsylvania (E.D. Pa. Crim. No. 04-cr-00192-2) and was ultimately convicted of offenses related to a bank robbery. In the federal case, the DNA collected by Pennsylvania in 2003 was used as a comparison to DNA recovered from a victim who

was carjacked and assaulted during the robbery scheme—the samples matched.[1]

In August 2005, Humbert initiated this federal lawsuit pro se, naming four Pennsylvania defendants. The short complaint simply stated that a DNA sample was taken, and he was "falsely logged as a convicted sexual offender," in violation of the Fourth and Fourteenth amendments. Humbert demanded $50,000,000 in damages. After some of the defendants were dismissed, Humbert amended his complaint to name additional defendants and add detail to his charges. He alleged that the defendants had "wrongfully, recklessly, and negligently logged the Plaintiff as being convicted of . . . kidnapping where the victim is a minor, while [he] had been found not guilty on said charge," and claimed that both the blood draw and his inclusion in the Megan's Law database violated his rights under the First, Fourth, Sixth, Eighth, and Fourteenth amendments. He stated that, after discovering his presence on the Megan's Law list, his daughter cut off contact with him; furthermore, his allegedly mistaken presence on the list "humiliated [and] embarrassed" him. Humbert asked the District Court to order him removed from the DNA Database "under the Megan's law" and award damages. The amended complaint was dismissed against the Pennsylvania Board of Probation and Parole (the "Board") and the Megan's Law Unit, but otherwise it survived the defendants' renewed motion to dismiss.

---

[1] We affirmed Humbert's conviction and sentence. See generally United States v. Humbert, 336 F. App'x 132 (3d Cir. 2009). A § 2255 motion appears to be pending

4

The District Court later appointed counsel for Humbert, who then filed (in 2009) a third amended complaint. It reasserted Humbert's claims regarding his inclusion in the Megan's Law database and the drawing of his blood for DNA purposes, emphasizing that he did not discover his Megan's Law designation until 2005. Humbert now complained that the various defendants received "actual notice" of his wrongful inclusion in the database due to the initiation of the instant lawsuit in 2005, and that his continued presence in the database was both indicative of "bad faith" and caused him "risk of serious bodily injury in the prison population." He now sought the removal of "all identifying information" from the sex-offender registry and the Megan's Law website, a finding that the blood draw contravened his constitutional rights, and fees and money damages. Shortly after the third amended complaint was filed, Humbert was removed from the Megan's Law website and put on "inactive" status.

The District Court addressed the final batch of claims in two thorough opinions. First, it dismissed DNA sample claim. Relying on both Pennsylvania and federal law, the Court determined that the blood draw did not violate the Fourth Amendment. See Humbert v. Langton, No. 1:CV-05-01967, 2010 U.S. Dist. LEXIS 92795, at *23–27 (M.D. Pa. Sept. 7, 2010) (citing, inter alia, United States v. Sczubelek, 402 F.3d 175, 184 (3d Cir. 2005), and Luckett v. Blaine, 850 A.2d 811, 817 (Pa. Commw. Ct. 2004)). Second, the Court granted summary judgment in favor of the remaining defendants,

---

before the District Court at the time of writing.

5

finding 1) that the conduct relating to Humbert's Megan's Law registration fell outside of the statute of limitations for 42 U.S.C. § 1983 actions, and that no exception to or tolling of the limitations period applied; and 2) that none of the defendants was personally involved in any constitutional violation. See generally Humbert v. Evanko, No. 1:CV-05-01967, 2012 U.S. Dist. LEXIS 86233 (M.D. Pa. June 21, 2012). This pro se appeal followed.[2]

Our review of both orders is plenary, and utilizes the same standards employed below. Mandel v. M&Q Packaging Corp., No. 11-3193, ___ F.3d ___, 2013 U.S. App. LEXIS 864, at *10 (3d Cir. Pa. Jan. 14, 2013); Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011). Having examined the entire record, including the defendants' evidentiary submissions, we agree that dismissal and summary judgment were warranted for substantially the same reasons articulated by the District Court.

Although the grounds presented by the District Court are sufficient to affirm, a few additional observations are warranted. With regard to Humbert's claims that the failure to immediately remove him from the Megan's Law database after he filed suit

---

[2] Humbert's "notice of appeal" was filed after the thirty-day period specified in Fed. R. App. P. 4(a)(1)(A). While acknowledging that the notice was not timely filed, we determined that an attachment to the notice could reasonably be construed as a timely Fed. R. App. P. 4(a)(5) motion, and remanded to the District Court for consideration of Humbert's request to extend the time to appeal. See C.A. No. 12-3163 (order entered November 26, 2012). The District Court granted the motion; thus, the notice of appeal was timely filed and we have jurisdiction under 28 U.S.C. § 1291.

amounted to a denial of procedural due process, we note that his first two complaints occasionally lacked specificity in their demands; indeed, the first sought damages only, whereas the second sought removal from the *DNA* database. The record gives no indication that Humbert pursued any state-level remedies, whether administrative or judicial, that might have expedited his removal from the Megan's Law database. See, e.g., Commonwealth v. Benner, 853 A.2d 1068, 1069–70 (Pa. Super. Ct. 2004) (describing a state-level request to be excused from compliance with Megan's Law registration requirements).[3]

Nor, for that matter, was Humbert clearly entitled to removal from the database. Humbert believes that his conviction for kidnapping by force but acquittal for the "fourteen-year-old" kidnapping meant that he was not convicted of a crime involving a minor. But as Douglas Grimes suggested in his deposition, the record of conviction is

_____

[3] All the same, we are somewhat troubled by the lack of articulation of how, exactly, an offender who believes he has been erroneously designated a Megan's Law registrant can remove himself from the list; the record suggests that multiple possible avenues to relief exist, but it is unclear which is preferred and which would be most efficient for an offender in Humbert's position. To the extent that Humbert's designation implicated a liberty interest to which due process rights would attach, see Schepers v. Comm'r, 691 F.3d 909, 914 (7th Cir. 2012), he would be justified in expecting some process for challenging his designation. However, a claim that Pennsylvania did not satisfy its own statutory scheme for providing instructions on how to correct erroneous data does not, in itself, state a claim under 42 U.S.C. § 1983, which applies only to violations of federal law. See McMullen v. Maple Shade Twp., 643 F.3d 96, 99 (3d Cir. 2011). Furthermore, Humbert concedes that he did not raise a claim attacking the defendants for violating a policy or custom.

not entirely clear, and no party appears to have access to materials that would shed light on the exact outcome of Humbert's trial.[4] Further, while Megan's Law requires a ten-year registration for kidnapping "where the victim is a minor," a "minor" is an individual under the age of *eighteen*, not fourteen, so the age-based version of the substantive kidnapping offense is not the only way that a person found guilty of the crime can be placed on the list. See 42 Pa. Cons. Stat. §§ 9792, 9795.1(a)(1). Under Pennsylvania law, kidnapping in this context can lead to placement in the Megan's Law registry even without the presence of a sexual offense; and as the mock-up of Humbert's Megan's Law registration shows, he was designated as having been convicted of "2901 - KIDNAPPING" in the public database. Given the multiple victims in the Pennsylvania case and the limited information available to Schwalm, the defendants' caution cannot be categorically faulted. See Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009) ("A negligent deprivation of due process will not sustain a § 1983 claim.") (citation omitted). Finally, we observe that, whether the claims are contemplated under procedural or substantive due process, the defendants would almost certainly be entitled to qualified immunity. See Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011); Walter v. Pike Cnty., 544 F.3d 182, 191 (3d Cir. 2008); see also Nicholas v. Miller, 189 F.3d 191, 195 (2d Cir. 1999) (per curiam) (qualified immunity properly raised when

---

[4] Grimes also stops short of saying definitively that Humbert should not have been registered in the first place.

asserted in answer but not also in summary judgment motion).

Because this appeal presents no substantial question, we will affirm the District Court's judgment. See Murray v. Bledsoe, 650 F.3d 246, 248 (3d Cir. 2011) (per curiam); see also 3d Cir. L.A.R. 27.4; I.O.P. 10.6. Humbert's motion for appointment of counsel is denied.